Good morning, your honors. James Inman on behalf of the plaintiff's appellants, Tommy Puckett and Roger Invance. I'd like to reserve three minutes for rebuttal. All right. Since 1974, the Lexington Fayette County Urban County Government has dramatically failed to honor its obligations under Kentucky law with respect to funding this pension for police and firefighters. In 2013, LFUCG pushed amendments to the act that controls the pension fund in order to alleviate its obligations and basically avoid its agreements with pensioners under the fund. This came after several lawsuits were filed between the parties in which the police and firefighters attempted to get the city to pay its fund for these pensions. The district court improperly dismissed the plaintiff's complaint below. Basically on a motion to dismiss, the court decided the facts of the case, ignored controlling law, and granted a 12B6 motion. Rather than considering that the complaint is not required to be persuasive, the court decided the facts and decided the law and ignored precedent from the Supreme Court in this court. There's no question that the standard of review makes a difference here. This is a 12B6. All you have to do is make adequate allegations. What I'm struggling with is the frame of the case. I think there's no question that there are protected rights for pensions and that we are across this trying to understand the particulars of how the COLA fits within that definition of the underlying pension obligations because that could make all the difference as to whether you're protected or not. What's your best argument and your best authority for the fact that the COLA obligation itself fits within that underlying right? Right. My best argument, and I want to first say that we're not arguing that any adjustment to the COLA is prohibited. What we're saying is that for retired pensioners where the pension is vested and particular COLA benefits are vested, those changes are unconstitutional. And the authority that I cite for that is there were two cases involving Louisville teachers. And it's a similar theme where you have a group of pensioners, a group of public employees who are part of a pension plan. In this case, the teachers were transitioning to a statewide system from a city system. And there was concern about who was going to pay for the remaining pensioners from that city. And these are the Board of Education of Louisville cases that we cited in our case. And in those decisions, the Supreme Court made it clear, and this was in 1941, that if the pensioners are required to pay contributions and those contributions go to a particular benefit, then they're conferred contractual rights to those benefits. And you can look at those, that decision was decided well before the pension fund in question here came into existence. And so in 1980, when the pensioners in our fund got together with the city to discuss the cost of living, the same, you can look at the statute in 1980, and there were only three provisions that were changed. And it basically codifies the agreement under the same sort of principle that you can trace the contributions that were newly required in 1980 to offset the two to five percent COLA increases that also were amended in 1980. So the authority that we're relying on is the Board of Education cases from Louisville, which basically says that when you have... And that's dependent upon your adequately having pled that there was a contractual arrangement for upping the contribution of the participants and the increased contributions from the county. You know, it's almost a quid pro quo. Tell me your best allegation in the complaint that gives a factual basis for that. Right, and the number of paragraphs are 35, 47, 48, 51, and 57 of the complaint. And essentially what we've alleged is that there was an agreement, and the agreement became codified in the Act, and that the prior versions of the Act, the legislative history of the Act, record the agreement. It's hard now to sit and say that in 2013, when the amendments were made, that that's the agreement, because you have to go all the way back to 1980 to trace when this two five percent COLA was secured. So that's where we have alleged it. Now, the District Court... So your allegations are the timing speaks for itself. Well, not just that. There was, in fact, an agreement, and it's improper for the District Court to dismiss and decide that there was not an agreement based on this record. You can't... The court cannot... We've cited, I believe it's the Mediacom case that says that you can't determine facts surrounding any agreement at the dismissal, the 12B6 stage, the pleading stage. So for the court to dismiss the case at that stage was improper. Now, if... In your agreement, factual analysis or factual allegations are the legislative history? That's correct. And legislative history is really the timing. Right. Am I correct? Well, that's right. Is there another... Is there anything else in the complaint that alleges who entered a deal or where the deal is memorialized or that it changed the lack of an inviolable contract statement in the COLA legislation? There's nothing that says inviolable contract, so that was not alleged. We do talk about that there was an agreement based on the prior versions of the Act. That's repeated several times in those paragraphs. And from that agreement, there were changes made to that agreement, and that was alleged, that the 2013 changes were a change to the agreement. Kind of the interplay here between the police and firefighters and the city and the state is important here, because the Commonwealth, while it codified the agreement, doesn't actually pay for anything from the fund. The money doesn't come from them. They don't take the contributions. They just kind of express an interest in overseeing the fund. But everything else is... We intend to prove that there was an agreement reached between the police and firefighters and the city. That agreement was taken to the General Assembly to be codified, and in 1980, that's what happened. And you can look throughout the history of the Act, and no other amendment was made where it took away from those rights. They've always added to those rights. And in fact, in a later year, I believe it was 1990, they added the benefits to retirees that retired prior to 1974, to bring them up to the same level, the same sort of cost of living issues were there for them as well. And there was a corresponding increase. And none of that is illogical. The problem for me and what I'm struggling with is that in order to show a there is a presumption that it is not contractual, that the legislature has retained its ability to make changes, unless they do something like they did in the underlying pensions. This is an inviolable contract. You can't get around it. So help... So I'm struggling with understanding what even at the pleading stage gets you over that hurdle, so that you step beyond that presumption and we can claim a contract. The US Trust Company case that we relied on, it's a Supreme Court case that says in a footnote, basically, that... And in that case, there was language in the contract that they looked at. But in a footnote, they said that you can look at the language and circumstances. And there have been circuit court decisions since that time that say, once you look at the language of the Act, you've got to look at the circumstances. And you make that clear in your argument. Right. And the question still remains, what circumstances are alleged that would be sufficient to enable you to say that you have pled beyond the presumption? Well, what I would say about the presumption is that, also in the US Trust case, in that same footnote, they cited two cases. There's the Dodge case and the Brand case. And they're looking at circumstances there. And in the Dodge case, they noted that there were state court decisions denying rights to pensioners. In the Brand case, they were saying, they said that there were circumstances that included the state court decisions in earlier cases that declared that they had those rights. So what we're saying is that the law in Kentucky, as it existed since 1941, supports the fact that when you agree with a group of public employees to grant them a pension with 1941, is when you do that and you set aside specific contributions that can be traced to the cost of living, there's a specific rate increase for that, for the cost of living, that that creates the agreement and creates the contract that satisfies the contract's clause. Without the inviolable contract... Without that language. That is underlying the core pension requirement. You don't need the magic language. And the fact that there are other state statutes in Kentucky that do have that language doesn't matter. You're supposed to... We've cited cases in our briefing that states that you're supposed to look at each pension independently. There's a particular danger in this case, is that some of these pension funds state that there's an inviolable contract, but they don't do anything with respect to the cost of living. Like the teacher retirement system doesn't do anything. The rest of the systems might say, we're accepting the COLA from the inviolable contract language, the teacher retirement system. Right, that's what they say, they accept it. But they don't have to accept it in yours because you don't have the inviolable contract language. Right. And my point about that is that if you look at it that way, then you're basically undercutting the entire pension system. And I don't think anybody would argue that there is no pension benefit, that there is no protected pension benefit, because the  apples to apples, where you're looking at the cost of living statute, there is no language in the cost of living provision. It's mandatory that it has to be awarded. There's nothing that says, there's discretion... It wouldn't destroy the whole pension system. There's a provision in the act, in section 610, that states that the fund members have a vested interest in their contributions to the fund. That's correct. So that's in there. There's also... What's not in there is in a provision that the retirees have a immutable lifetime entitlement to COLA increases in their public pensions under the pre 2013 terms. So I take it that you're agreeing that that's not in there, but you think that it was agreed to based upon circumstances or whatever, even though it's not in the act, it is what I'm getting from you. My time is up here, but I would just answer your question. Sure. 630 also says that you can't increase, decrease, revoke, or repeal any provision, any benefit conferred under the act. So there is language in the act that says that. But in addition, my point is that if you're looking at circumstances under the language and circumstances test, that you have to look at the law. I don't know what the language and circumstances test is. So if you're gonna argue that, you may first need to explain that and what that is. Well, that's the test that was set forth by the Supreme Court and US Trust when looking at whether or not the legislature intended to confer a contractual right. Well, there are no contractual... Aren't we under the unmistakability doctrine here? It's the same... That's what you're talking about. It's the same. Well, under that, there has to be a clear intent by the legislature to create a right not to change a contract. And that's what we don't have here, which means you lose. Well, I respectfully disagree. My time is up. And I... Well, you can answer. You can take the time to answer. What I would say is that at the time that the 1941 cases were decided, when any point later, when you confront or when you confer with a public... A body of public employees and decide to confer pension benefits and cost of living benefits, that you have to understand that the state of law in Kentucky provides that those rights are protected. The fact that you can look at... You can look at the... The court statute says COLA benefits are protected, are immutable and can never be changed in public contracts in Kentucky. There's nothing in your brief that supports that? There's no statute that says that. I'll agree. But the point is that when the changes were made to the cost of living, you could look at the cost... At the contributions that were mandatory from employees. They went from paying 8% to adding 2% to that to cover the cost of living. And if you've got a vested right in your contributions, then that would cover the earmarked contributions for cost of living as well. Alright. Thank you. May it please the court, I'm Keith Moorman. I represent all of the appellees except the Commonwealth of Kentucky. The appellees have agreed to divide the argument with me taking 12 minutes and the Commonwealth will have three minutes. Alright. The only question in this case is... I'm sorry. Go ahead. I was waiting for you to turn the light on there. We're having a lag with the lights this morning for some reason. Go ahead. Thank you, Your Honor. The only question is whether in 1980, when the General Assembly decided to enact a COLA rate of 2% to 5%, it intended that 2% to 5% to never be capable of being amended in the future by any future legislature. Now, as the court has recognized in its questions, that requires that the General Assembly in 1980 intended to create a contractual bond that it could not break. But the law presumes that a statute does not create such a contract. And the only way to overcome that presumption is to show by clear evidence that they did intend to create a contract. But we're not at the summary judgment standard. We're at the leading standard. That's right, Your Honor, and I'd like to address that. The issue, first and foremost, is legislative intent. And as we know, legislatures only speak through the words of their statute. So if it's not in the statute, it doesn't matter what I thought they were doing or what... No, but there is case law that says that you may look to circumstances. The circumstances... I'm sorry. The circumstances and the question before us is whether the circumstances as played in this situation are adequate. Well, Your Honor, if you'll forgive me, I disagree with that. You can't... Good job. Right ahead. The case law does say you can look to language and circumstances. And my argument is you would look at circumstances if the language of the statute was somehow clear. But you couldn't look to circumstances to then say you had an agreement that directly contradicts what the language of the statute is. I would also say... Well, I don't... Yeah. I'm sorry. Perhaps we would disagree on that because the problem with this statute is not that you have a contradiction of the language, it's that there may be something missing in the inviolable contract wording of the underlying pension obligations. There's no question. The legislature said, we are... Our hands are tied. This is an inviolable contract, we are going to give you that pension. So the question before us is whether when the inviolable contract language is missing, what else do you need to allege in order to state a claim? And your position is you haven't done enough here. And so my question is, why not? Why not? Two reasons, Your Honor. One, it might be that if there were legislative history, you could consider that as a circumstance to shed light on what the legislature was intending. In Kentucky, there's really no meaningful legislative history on most acts. We don't have any hearings, we don't have any drafts, we don't have any testimony to a committee, none of that's there. So the only legislative history that the appellants allege exists is the mere fact that two sections were changed at the same time, which they contend must have reflected an agreement. And I would submit that is simply not enough to overcome the strong presumption that a statute intends to create an agreement. The General Assembly certainly could have said, in exchange for the increased contributions, there shall be a COLA, which shall never change. And they did not do that. And so I do argue that to now come back and suppose that maybe they meant to do that, or let's speculate they might have wanted to do that, would be contrary. Their argument is, we aren't saying that. We're saying you made a deal. Well, and the question is whether they have adequately alleged that there was some sort of a deal. We all have to recognize this is an exceedingly sensitive subject. We are talking about the pension benefits of public employees who have rendered police and fire service to your community. So you understand the concern and the concern that the pensions have not been funded, which has gone on all across America. But the question before us is not that. That's the underlying problem. The question before us is whether there is an adequate allegation based on the language of the 1980 acts. And I'm struggling to understand what else, to see what else there is in the complaint. Your position is that there is nothing else, right? There is nothing else in the complaint. There is this naked assertion that there was an agreement. The appellants in their brief often will say that we know there was an agreement, but we don't. There is no evidence. Is alleging it sufficient for them to proceed to discovery? I believe, Your Honor, they have to allege that the language and circumstances create the contract right. What they appear to be alleging is that if you were to look, we might find some evidence that would show that that language isn't what it says. There was actually a secret agreement that would make this inviolable. And I do think that would violate statutory construction to 36 years after the statute was passed, allow people to comment on what they thought this change meant. Because there's been no allegation that there is an actual written agreement. This is far different from cases where there was a collective bargaining agreement. And clearly that created contractual rights. And the collective bargaining agreement is reflected perhaps in an amendment. As I understand the appellant's argument, they simply want to go, and I assume they haven't really said, take depositions of people who were around in 1980 and see what they thought this change was going to do. And my argument would be you could do that on every statute that ever got passed. There's always people who have an interest in the statute. And you could say, well, what did you think it was going to do? I thought it was going to create a vested right. Well, I didn't think. At the end of the day, it all comes back to the legislature's intent, not the intent of the people who were going to be affected by the change, not the intent of the people who were involved. Yes, the police and firefighters, we all respect them. But their intent in 1980 does not control what the legislature intended to do. For that... So lacking in viable contract language, it's your position, and the nature of COLAs as distinct from an underlying pension obligation. That's the basis of why this doesn't stay the claim. That's the basis. Anything else? Well, no, Your Honor. My point is, I think you always have to go to the legislative intent, and that any opening of the doors of discovery will not shed light on the legislative intent. It might tell us what different people thought, but at the end of the day, that can't change what the other statutes affecting public pensions in Kentucky, that the legislature certainly knew how to put the inviolable contract language in when it wanted to. And we also know that when it made a statute inviolable, it exempted the COLA. So I request that the court honor the fact that the legislature does know what it's doing and how to do it, and not assume that, well, this time they messed it up. And we need to allow discovery to see if there might have been a secret agreement that the appellants can't give us any details on. Who was it with? What were the details? And see if we can overcome the language of the statute. I would suggest that that would be impermissible. And for many reasons. In many ways, the appellants are arguing that there's an implied contract. Well, you can't have an implied contract against the government. What if they are alleging, which they haven't said, that the chief of police was the one they had the agreement with? Well, the LFUCG can only bind itself through an action of the council, so there'd have to be an ordinance. What was this agreement? Who reached it? Who signed it? They've never said. And so I do think that is a serious weakness just on Iqbal and Twombly, that you need to say more than we had an agreement, but we can't tell you what it was. But I would also argue that even without Iqbal and Twombly, any such agreement can't affect the statutory intent. And it's always the legislative intent that matters. And here, the General Assembly chose not to make this a binding COLA. And as you said, Judge Stranch, there's no case that we have found in the country that says a COLA is a vested right. They all say COLA is something different. Whether it's tied to consumer price index or whether it's tied to a legislative grant, there has to be flexibility with a cost of living adjustment. That is the nature of a cost of living adjustment. It's not... Unless you could actually allege a contract, such as a collective bargaining agreement, that might have a COLA provision. Yes. If there was a fixed agreement that will never alter your COLA, none of the cases involve that. None of them show that. It's a different jurisdiction. But the Zucker case is an interesting case on COLA because there they had a cost of living based on CPI, then they tacked on 1%, then they took away the 1%, and the allegation was, we can't take it away. And that court said, well, you don't have a property right in an ongoing cost of living adjustment. I forget the language they used, but it was a government fostered expectation only. It was not property. It was not an intent to create a contract. In response to the due process arguments. Just to be clear, the... As I understand, the plaintiffs are not raising in this appeal whether they have a right to a COLA. They're raising whether they have a right to keep the COLA at 2% to 5%, and it can never be changed. That's what they are arguing, and that's what they've asserted, and that's what this appeal presents, as I understand it. Is that right? That is what they are arguing, and that is the contract they say was created, was that in 1980, the legislature created a contract that isn't reflected in the language of the statute that said, the people who retire under a 2% to 5% COLA will always get that 2% to 5% COLA. But again, that's not in the language of the statute, and there's been no allegation of a collective bargaining agreement or some binding contract that would have created that right. Now, actually, the COLA has not changed as of yet, has it? It has changed, Your Honor. I don't think that's in the record, but it can change back to the 2% to 5%, but only when the overall funding of the program is down to 1%, arguably. For some, and we don't know for these particular appellants, but it's now either 1, 1.5, or 2, depending on the amount of your annuity. When the program plan reaches 85%, I actually... It's, again, not in the record, but I asked this week, and it's currently at 79%. So it's not yet at the 85% threshold that would kick in the return to the 2% to 5%. And of course, it's not going to be funded. Well... What is the estimate? 30 years? I don't think it's 30 years. There's a part of this case, Your Honor, that Mr. Puckett actually filed three different challenges to the changes, and there's one in state court that contested the funding. The 2013 amendments to deal with the unfunded liability, it changed the way that was to be paid so that it would be paid off over 30 years. And I think the hope for that was that as years go along, instead of the unfunded liability increasing, it does get paid down. So I know in their briefs... The contributions are actually made. Right. Yes, they are being made on a basis that doesn't just cover the present obligation, but... But covers the unfunded liability? Yes. Pays down... Over 30 years? At the end, it'll all be paid. The point is, I can't say that it won't get above 85% long before then, because if it's gonna be paid off in 30 years, you would think it would be almost paid off in 29, almost paid off in 28, because these are equal payments towards the unfunded liability. And I apologize, I'm way out of time, but... Oh, that's all right. You have a lot of questions. I wasn't sure, though, Judge Strange, if you were commenting on due process with  interest. Well, it would appear that your response to the due process arguments is there's no property interest. There's no property interest, and to the extent any procedure was due, the legislative process was the process. Okay, thank you. Thank you very much. Thank you. Good morning, I'm Assistant Attorney General Joe Newberg for the Commonwealth, and may it please the court. With the bounce of the time, I'm just going to discuss why dismissal is also proper under the 11th Amendment, and that ground was not reached by the District Court. The 11th Amendment, of course, provides that a state cannot be sued by a private citizen in a federal court without the consent of the state or a valid congressional override. Now, Section 1983 has been interpreted under Kentucky v. Graham, a US Supreme Court case, that it was not intended to abrogate a state's 11th Amendment immunity, so in order... Can you respond to the plaintiff's citation to Commonwealth v. Kentucky Retirement Systems in 2013? They say that the Commonwealth has waived sovereign immunity in this case. I'd be happy to distinguish that case, Judge Strange. First and most importantly, the Kentucky Supreme Court in the Kentucky Retirement Systems case found only an implied waiver of immunity, and I'll quote from the opinion, the court held that the Commonwealth, quote, implicitly waived sovereign immunity in the context of determining the relative rights and responsibilities under the statute. Now, under the US Supreme Court case of Pennhurst State School and Hospital v. Halderman, the waiver of 11th Amendment immunity must be explicit. And the analysis could end there, but I will distinguish it in other ways as well. The court in Kentucky Retirement Systems was also dealing with a separate statute and a separate retirement system. And as has been discussed, in that particular statute, the inviolable contract language was there. And then finally, the Kentucky Supreme Court in that case was discussing waiver of the Commonwealth's immunity under the Kentucky Declaratory Judgment Act. They weren't speaking to the immunity under the 11th Amendment in a federal court. And then also briefly, under Kentucky Constitution Section 231, that is kind of the analogous provision that provides that only the General Assembly may prescribe when the Commonwealth can be sued and in what court. And quite simply, the appellants can't point to any waiver, explicit or implicit, regarding this pension fund and this statute that would allow the Commonwealth to be a defendant, not in federal court and not in state court. Unless the panel has any questions, I'll conclude. If we agree with your argument, does that mean that we shouldn't reach any of these other arguments? Immunity is the threshold issue. And obviously, this is a defense that's only available to one of the defendants, the Commonwealth. But yes, if you find that the Commonwealth is immune, the analysis ends there. All right. Thank you. Thank you all. Your Honors, I just want to address a couple of issues there. The city's argued that the cost of living doesn't go away completely. And that's not entirely accurate. They've instituted a scaled system. And depending on how much money a retiree receives in their pension, if it's at a certain level, they don't get a cost of living. So it has changed for those retirees. We're not arguing that the cost of living, as I said before, can never be changed. We're just arguing that if you're... If you're referring to the changes based on the 2013 amendments? Correct. Okay. And we're not arguing that the cost of living can never be changed. We're just saying that for the current retirees, according to Kentucky law, they have vested rights and vested interests in their pensions and their cost of living as of the time that they retire. They cannot be changed. In every other respect, the act treated changes to increased contributions, reduced pensions. They treated those changes prospectively. The only thing that applied to current retirees was the cost of living. And we believe that that was incorrect. The district court didn't have a problem looking at the legislative history. It viewed the... When it dismissed the case, it viewed the legislative history as a legal question that they could examine. They weren't... The court wasn't concerned that something was not alleged there regarding the prior history of the act. I wanted to give an example... But the court didn't find that even the additional proposed paragraphs for an amended complaint would have altered the analysis. Right. And that's a good point. The district court was concerned that even with all of that, as a matter of law, there was not a claim stated. It wasn't a pleading issue, which is a distinction. I did want to address one thing because the crux of our argument is that in 1980, when the contributions were increased at a specific percentage to offset the cost of this cost of living increase, what the General Assembly could have done at that point is say, we're going to increase the cost of living for pensioners by X percent. And done that, and then left it to the actuaries to determine what the contribution rate should be. That's not what happened here, but that's what happens in other pension funds. What happened here is the parties agreed, they bargained for these specific rates to pay for this specific percentage of cost of living. The Mediacom case is important, and I mentioned it earlier, and I wanted to facts surrounding any agreement. We've alleged that there was an agreement. It was improper for the district court to go and resolve all the legal questions, all the factual questions concerning that agreement. Again, I would remind the court that the standard is not that we have to be persuasive, but just plausible. I'm out of time here, but does the court have any other questions? Apparently not. Thank you very much, and the case is submitted.